UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JEANA K. REINBOLD, solely as Chapter 7 Trustee of the Estate of I80 Equipment, LLC, | )<br>)<br>) |
| Appellant, | )<br>) |
| v. | ) Case No. 4:25-cv-04060-SLD<br>) |
| MENARD, INC., | )<br>) |
| Appellee. | )<br>) |

ORDER

Pending before the Court is Appellee Menard, Inc.'s ("Menard") Motion for Certification of Direct Appeal to the Court of Appeals for the 7th Circuit ("Motion for Direct Appeal"), ECF No. 5.[1] For the reasons that follow, the Motion for Direct Appeal is GRANTED.

**BACKGROUND**[2]

I80 Equipment, LLC ("Debtor") filed a Chapter 7 bankruptcy petition in 2017 and was involuntarily dissolved a year later. Adversarial Compl. ¶¶ 6–7, ECF No. 2-1 at 25–31. Debtor's sole member, Erik P. Jones, *id.* ¶ 8, had "defrauded First Midwest Bank to the tune of millions of dollars by obtaining loans for [Debtor] through false pretenses," the proceeds of which were used "to pay off previous creditors of [Debtor]." Feb. 28, 2025 Summ. J. Opinion 3, ECF No. 3-77 at 6–23. Jones was subsequently convicted for bank fraud and money laundering. *See generally* J., *United States v. Jones*, 4:20-cr-40056-JEH (C.D. Ill. July 25, 2024), ECF No. 88. The Motion for Direct Appeal concerns an adversarial proceeding stemming from how credit cards issued to Debtor were used to the ultimate benefit of non-debtor persons by agents of

---

[1] ECF references refer to the docket of 4:25-cv-04060-SLD unless otherwise noted.
[2] Unless otherwise noted, the Court recites the facts which the Bankruptcy Court relied upon in its opinion granting summary judgment in favor of Menard. *See generally* Feb. 28, 2025 Summ. J. Opinion, ECF No. 3-77 at 6–23.

Jones, Jones Lease Properties ("JL"), and J.P. Rentals ("JP"), the latter two also being sole-member LLCs belonging to Jones.

Debtor was in the business of restoring and reselling bucket trucks, whereas JL and JP rented and/or managed rental properties. During the relevant pre-petition period, Debtor had two credit cards: (1) a card issued by First Midwest Bank with a credit limit of $300,000; and (2) a card issued by U.S. Bank with a credit limit of at least $450,000. JL and JP acquired credit cards of their own, but those cards had only a $50,000 credit limit. Debtor "authorized agents of JL, JP, or Jones . . . to use Debtor's credit cards for the sole and limited purpose of making retail payments to" Menard. Feb. 28, 2025 Summ. J. Opinion 3. In the two years preceding Debtor's bankruptcy petition, Debtor paid Menard a total of $707,242.49 by credit card at Menard's stores in Illinois and Iowa.[3] As an illustrative example, one occasion involved the purchase of "a ceiling fan, a towel bar, a towel ring, plumbing supplies, and other items not likely to be used to restore buckets trucks but relevant to maintaining rental properties." *Id.* at 4. "JL and JP never paid [Debtor] back" for these purchases using Debtor's credit cards. *Id.* at 3.

Jeana K. Reinbold ("the Trustee") was appointed as the Chapter 7 trustee for Debtor's bankruptcy case. Adversarial Compl. ¶ 6. She was tasked with "collect[ing] and reduc[ing] to money the property of the estate." 11 U.S.C. § 704(a)(1). She chose to discharge that duty in part by initiating forty-seven adversarial proceedings against various parties seeking to recover transfers of Debtor's property pursuant to her "avoiding powers" under Chapter 5 of the Bankruptcy Code. Resp. Mot. Direct Appeal 2, ECF No. 7. Thirty-four of those proceedings—including the instant action against Menard, the only Defendant in this category who has not

---

[3] The Trustee seeks to recover a slightly larger sum, $707,322.95, Adversarial Compl. ¶ 16, as one transaction of $80.46 on April 6, 2016 was completed with either cash or a debit card, Feb. 28, 2025 Summ. J. Opinion 4. The parties do not address whether this transaction alters the certification analysis and focus instead on the credit card transactions.

settled—sought "recovery of transfers that the Trustee alleged were actually and constructively fraudulent under the standards of 11 U.S.C. § 548." *Id.*; *see also* 11 U.S.C. § 548(a)(1)(A) (actual fraud); *id.* § 548(a)(1)(B) (constructive fraud).  Specifically, the Trustee asserted that the transfers between Debtor and Menard "were for the benefit of Jones, [JL], [JP] or other individuals or non-Debtor entities . . . , not the Debtor." Adversarial Compl. ¶ 18.  Menard asserted as an affirmative defense that it was a good-faith initial transferee, such that it was entitled to retain the at-issue transfers from Debtor.  *See* 11 U.S.C. § 548(c) ("[A] transferee or obligee of such a transfer or obligation that takes for value and in good faith . . . may retain any interest transferred . . . to the extent that such transferee or obligee gave value *to the debtor* in exchange for such transfer or obligation." (emphasis added)).

On February 28, 2025, the Bankruptcy Court granted Menard's renewed motion for summary judgment, finding that Menard was entitled to the good-faith-initial-transferee defense under § 548(c) because its good faith was not disputed, and because it gave value to the Debtor or its designees, even though the goods purchased from Menard were ultimately used for JL and JP's businesses, not Debtor's.  The Trustee filed a Notice of Appeal and Statement of Election on March 17, 2025, requesting that the Court review the Bankruptcy Court's February 28, 2025 Opinion and Judgment in favor of Menard.  Not. Appeal, ECF No. 1.  On April 29, 2025, Menard filed the instant Motion for Direct Appeal, requesting that the Court certify that this case should be directly appealed to the Seventh Circuit, invoking 28 U.S.C. § 158(d)(2)(A).  Mot. Direct Appeal 1.  The Trustee opposes Menard's request.  *See generally* Resp. Mot. Direct Appeal.

## DISCUSSION

### I. Legal Standard

A court of appeals may authorize the direct appeal of certain judgments, orders, or decrees made by a bankruptcy court if a district court certifies that any of these four disjunctive criteria are satisfied:

> (i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;
> (ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions; or
> (iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

28 U.S.C. § 158(d)(2)(A); *see also Bullard v. Blue Hills Bank*, 575 U.S. 496, 508 (2015) ("Unlike [28 U.S.C.] § 1292(b), which permits certification only when three enumerated factors suggesting importance are all present, § 158(d)(2) permits certification when any one of several such factors exists, a distinction that allows a broader range of interlocutory decisions to make their way to the courts of appeals."). Certification is mandatory for a district court upon finding that any of the four conditions are satisfied. *See* 28 U.S.C. § 158(d)(2)(B) ("[T]he district court . . . *shall* make the certification described in subparagraph (A)." (emphasis added)).

### II. Analysis

Menard seeks certification of the following question:

> In an otherwise normal retail transaction, does a corporate debtor who authorized and paid for the goods through an agent or designee receive value from the retailer under 11 U.S.C. § 548(c) when the goods are transferred from the retailer to that same agent or designee if the purchase is made for the benefit of a non-debtor person and the goods are used by a non-debtor person?

Mot. Direct Appeal 8. Menard asserts that certification is appropriate because: (1) there is no controlling decision from the Seventh Circuit or Supreme Court addressing the application of

4

§ 548(c) to this fact pattern, *id.* at 5; (2) the Bankruptcy Court's opinion involves a matter of public importance because trustees in this circuit frequently pursue this type of avoidance action and "[t]hese cases generally settle early, and for amounts significantly smaller than what it would cost the defendants to litigate [the] Trustee's claims," *id.* at 6–7; and (3) a direct appeal will materially advance this action, *id.* at 7.

The Trustee responds that § 548(d)(2) defines value in relevant part as "property," such that this case is controlled by the Supreme Court's decision in *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992), and the Seventh Circuit's decision in *In re Atchison*, 925 F.2d 209, 210 (7th Cir. 1991). Resp. Mot. Direct Appeal 2–4. The cited portions of those decisions restate a longstanding principle of bankruptcy law, namely that state law determines the scope of property rights in bankruptcy proceedings. *See, e.g.*, *Barnhill*, 503 U.S. at 398 ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law."); *see also Bd. of Trade of City of Chi. v. Johnson*, 264 U.S. 1, 10 (1924) (noting that where bankruptcy law "deals with property rights which are regulated by the state law, the federal courts in bankruptcy will follow the state courts" but that when federal law "indicates a policy requiring a broader construction of the statute than the state decisions would give it, federal courts cannot be concluded by them"). As to Menard's two other arguments, the Trustee responds that this appeal does not "involve[] a question of public importance any more than other avoidance actions a trustee may undertake," Resp. Mot Direct Appeal 6, and that Menard may not "rely on the truism that leapfrogging District Court review always advances litigation or will materially advance this case," *id.* (citing *WestLB AG v. Kelley*, 514 B.R. 287, 293 (D. Minn. 2014)).

The Court agrees that merely leapfrogging district-court review is not a sufficient basis to certify this case for a direct appeal. Menard asserts that "it is highly likely that irrespective of

5

any result before this Court, this question will be presented to at least the Seventh Circuit in the future," such that "judicial economy is served through certification of this question now, and this case will be materially advanced accordingly." Mot. Direct Appeal 9. "But if the mere expectation of advancement to a circuit court was sufficient to establish material advancement, Section 158(d)(2)(A) would effectively eliminate the district court from the bankruptcy review process altogether." *In re Lehman Bros. Inc.*, Nos. 13 Civ. 5381(DLC), 13 Civ. 5964(DLC), 2013 WL 5272937, at *5 (S.D.N.Y. Sept. 18, 2013). The representation that this Court's decision would not be the final say on this issue is insufficient to justify a finding that certification for direct appeal is warranted based upon material advancement. However, the Court finds that Menard has demonstrated that certification is warranted under the two disjunctive criteria listed in § 158(d)(2)(A)(i) because there is no controlling decision on this issue and because this issue involves a matter of public importance.

Regarding the first criterion listed in § 158(d)(2)(A)(i), "[c]ontrolling law for the purposes of section 158(d)(2)(A)(i) is that which admits of no ambiguity in resolving the issue." *In re Millennium Lab Holdings II, LLC*, 543 B.R. 703, 711 (Bankr. D. Del. 2016) (quotation marks omitted). The Bankruptcy Court, having found in prior orders that "Menard was an initial transferee of an interest of the [D]ebtor in property," cited the Seventh Circuit's decision in *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 897 (7th Cir. 1988), when deciding that Menard gave value to Debtor. *See* Feb. 28, 2025 Summ. J. Opinion 11–12. *Bonded* analyzed a similar good-faith-based defense for transferees under 11 U.S.C.§ 550(b)(1), but that defense is available only to subsequent transferees, not initial transferees. *See id.* at 8; *In re Smith*, 811 F.3d 228, 246 (7th Cir. 2016). *Bonded* explicitly distinguished the defense available under § 548(c) and focused its analysis on cases that construed § 550. *Bonded*, 838

6

F.2d at 897. Yet *Bonded* noted that transferees "give value, if at all, to their transferors (or the transferors' designees)." *Id*. This point about designees was relevant to the Bankruptcy Court's analysis because the Trustee admitted that:

> [A]gents of JL, JP, or Jones used Debtor's credit cards to make the [t]ransfers for the purpose of purchasing goods from Menard for JL, JP, or Jones, that such individuals were authorized by the Debtor to use the Debtor's credit cards to make the Transfers for such purpose and thus became agents of the Debtor for the sole and limited purpose of using the Debtor's credit cards to make the Transfers for such purpose.

Resp. Renewed Mot. Summ. J. 8, ECF No 3-1. The Bankruptcy Court found that the authorization to use Debtor's credit cards meant that Debtor "necessarily designated that one of those entities could receive the goods," such that, from Menard's perspective, Debtor received value via its designees because Debtor's credit cards were used to pay for the goods from Menard in a present sale. Feb. 28, 2025 Summ. J. Opinion 11–12 (first citing UCC § 2-210(1);[4] and then citing *Bonded*, 838 F.2d at 897); *see also id.* at 12 ("From Menard's perspective, it gave value to the person who paid regardless of what different corporate hats that person may have been wearing."). The Bankruptcy Court buttressed this analysis and its focus upon the transferee's perspective by relying upon cases analyzing § 548(c) from the Fifth Circuit and Southern District of Florida, not the Seventh Circuit or Supreme Court. *Id.* at 12 (first citing *In re Hannover Corp.*, 310 F.3d 796, 803 (5th Cir. 2002); and then citing *In re Phoenix Diversified Inv. Corp.*, Nos. 08-15917-EPK, 10-03005-EPK, 2011 WL 2182881, at *5 (Bankr. S.D. Fla. June 2, 2011)). While *Bonded* certainly accords with those cases, it is ambiguous as to whether *Bonded* is a controlling authority regarding the proper application of § 548(c) to these facts.

---

[4] UCC § 2-210(1) provides in relevant part that "[a] party may perform his duty through a delegate unless otherwise agreed or unless the other party has a substantial interest in having his original promisor perform or control the acts required by the contract."

7

The Trustee points to *Atchison* and the Bankruptcy Court's September 1, 2020 Order denying Menard's motion to dismiss, and argues that the Bankruptcy Court ignored controlling decisions when it incorrectly concluded that the meaning of § 548(c)'s use of "value to the debtor" must be construed with reference to state law, not federal law. Resp. Mot. Direct Appeal 2–4. The Trustee further asserts that the Bankruptcy Court "effectively reversed" its September 1, 2020 Order by concluding that construction of § 548(c)'s use of "value to the debtor" was a matter of federal law, quoting at length from that prior Order. *Id.* at 3. But both sources are procedurally distinguishable, and the Bankruptcy Court's September 1, 2020 Order actually supports the Bankruptcy Court's February 28, 2025 Order's conclusion regarding the applicability of federal law. To explain, *Atchison* concerned a motion to dismiss challenging whether a trustee had plausibly alleged that a transfer was avoidable under § 548(a), not whether the defendant was entitled to an affirmative defense at summary judgment. *Atchison*, 925 F.2d at 210. *Atchison* does not control the proper application of § 548(c) to these facts, let alone unambiguously so.

As to the Bankruptcy Court's September 1, 2020 Order, the Bankruptcy Court concluded that factual disputes precluded resolving whether Debtor received value from Menard on a motion to dismiss. Sept. 1, 2020 Mot. Dismiss Order 3–8, ECF No. 2-4 at 23–31. The Bankruptcy Court did indeed find that "[n]othing in Article 2 [of the Uniform Commercial Code] mandate[d] a singular identity between the party who pays the purchase price and the buyer who takes title to the goods." *Id.* at 5. But it did so because of the procedural posture, noting that it was required to infer "that the persons who made the purchases were employees or agents of [JL], [JP] or . . . Jones, and were not acting as agents of [Debtor] when the purchases were made, although they may have been authorized to make the purchases on [Debtor]'s credit card." *Id.* at

8; *see also id.* ("Whether the Trustee can prove her factual allegations and those favorable inferences, remains to be seen."). Upon further factual development, the Trustee admitted that the purchasers were "agents of the Debtor for the sole and limited purpose of using the Debtor's credit cards to make the [t]ransfers." Resp. Renewed Mot. Summ. J. 8. The Bankruptcy Court then concluded that this agency relationship necessarily implied that Debtor designated that those agents "could receive the goods" on its behalf. Feb. 28, 2025 Summ. J. Opinion 11. In other words, the Bankruptcy Court did not change its view of the law and applied that view to the further developed factual record, which included the Trustee's admission that those using Debtor's credit cards did so as Debtor's agents.

Most relevant to the Motion for Direct Appeal, the Bankruptcy Court has consistently maintained that the question of whether Menard gave value to Debtor is to be decided as a matter of federal law, not state law. *See* Sept. 1, 2020 Mot. Dismiss Order 3 ("While state statutes may play an important role in determining a debtor's property rights and liabilities, applying the Bankruptcy Code to those rights and obligations is ultimately a question of federal law."); Feb. 28, 2025 Summ. J. Opinion 15 ("The phrase 'value to the debtor' in §548(c) is construed as a matter of federal law." (citing *Warsco v. Creditmax Collection Agency, Inc.*, 56 F.4th 1134, 1136 (7th Cir. 2023))). The Trustee's assertion that the Bankruptcy Court failed to understand that state law must control this issue because "value" means "property," *see* 11 U.S.C. § 548(d), ignores that the question of who received that property has been consistently analyzed as a question of federal law. Her argument that this distinction between federal and state law is unambiguously resolved by basic bankruptcy law maxims is unpersuasive.

Regarding the second criterion listed in § 158(d)(2)(A)(i), Menard asserts that this action involves an issue of public importance, specifically because these adversarial actions are

9

frequently pursued by trustees but settle early as the amounts at issue are smaller than what it would cost to litigate the claims. Mot. Direct Appeal 6–7. The Trustee takes issue with Menard's characterization that she is "seeking to achieve low dollar settlements" and notes that business judgment is the standard by which to assess the reasonableness of a trustee's litigation decisions. Resp. Mot. Direct Appeal 2 n.1. She further argues that Menard's opinion is unfounded "and should not be [the] basis for the review they seek." *Id.* Ultimately whether it makes sense as a matter of business judgment to pursue and settle these sorts of claims is not the right question. Even if the shrewdest businessperson would behave in the same exact manner, the issue is that this litigation conduct results in a lack of precedent-creating cases. Similar concerns have led to certified appeals under § 158(d)(2)(A)(i). *See In re Wright*, 492 F.3d 829, 831–32 (7th Cir. 2007) ("A clear answer is needed—yet this issue appears to be 'stuck' in the bankruptcy courts. . . . Lower litigation costs for thousands of debtors and creditors may be achieved by expediting appellate consideration of this case."); *In re Immel*, No. 17-22036-GMH, 2018 WL 4043293, at *7 (Bankr. E.D. Wis. Aug. 22, 2018) ("[A]nother case presenting the issue is unlikely to reach the court of appeals soon. The small stakes that are at issue in each individual lien-avoidance dispute in comparison to litigating an appeal will likely lead most lienholders to compromise or capitulate rather than contest the matter through multiple courts."). The Trustee's only other argument offered in response, that this is a routine avoidance action which is no more important than any other, is perfunctory and unpersuasive. *See* Resp. Mot. Direct Appeal 6.

      The Court finds that certification of a direct appeal under either criterion of 28 U.S.C. § 158(d)(2)(A)(i) is warranted. A copy of the Bankruptcy Court's February 28, 2025 Order and Judgment will be attached to this Opinion.

## CONCLUSION

Accordingly, Appellee Menard, Inc.'s Motion for Certification of Direct Appeal to the Court of Appeals for the 7th Circuit, ECF No. 5, is GRANTED.

Entered this 23rd day of May, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
